RECEIVED JAN 1 4 2008 CLERK, U.S. DISTRICT COURT ANCHORAGE, A.K.

# United States District Court
## for the
## District of Alaska
### Petition for Warrant or Summons for Offender Under Supervised Release

| | |
|---|---|
| Name of Offender: Dwayne Dollison Jr. | Case Number: 3:05-cr-00110-01 (RRB) |
| Sentencing Judicial Officer: | Ralph R. Beistline, U.S. District Court Judge |
| Date of Original Sentence: | January 17, 2007 |
| Original Offense: | Felon in Possession of a Firearm (Two Counts) |
| Original Sentence: | 27 months on both counts to run concurrently |
| Date Supervision Commenced: | August 17, 2007 |
| Asst. U.S. Attorney: Kevin Feldis | Defense Attorney: Allan Beiswenger |

## PETITIONING THE COURT

[X] To issue a warrant
[ ] To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The defendant has violated the Special Condition of Supervision, "The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician," in that on or about August 19, 2007, the defendant used marijuana. This violation is a Grade C violation. |
| 2 | The defendant has violated the Special Condition of Supervision, "The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician," in that on or about August 29, 2007, the defendant used marijuana. This violation is a Grade C violation. |
| 3 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall notify the probation officer at least ten days prior to any change in employment or residence," in that on or about August 28 through September 4, 2007, the defendant did not reside at his reported residence, but instead was residing at a secondary residence without the knowledge or permission of his probation officer. This violation is a Grade C violation. |

| | |
|---|---|
| 4 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on September 14, 2007, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |
| 5 | The defendant has violated the Special Condition of Supervision, "The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician," in that on or about September 18, 2007, the defendant used marijuana. This violation is a Grade C violation. |
| 6 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on November 21, 2007, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |
| 7 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall notify the probation officer at least ten days prior to any change in employment or residence," in that on or about November 29 through December 3, 2007, the defendant did not reside at his reported residence, but instead was residing at a secondary residence without the knowledge or permission of his probation officer. This violation is a Grade C violation. |
| 8 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on December 12, 2007, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |

| | |
|---|---|
| 9 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall not possess a firearm, destructive device, or any other dangerous weapon," in that on or about January 1, 2008, the defendant was in possession of a firearm; to wit: a 9mm Smith & Wesson semiautomatic handgun. Following contact with officers of the Anchorage Police Department (APD), a vehicle the defendant was operating was impounded. A subsequent search of the vehicle uncovered a 9mm Smith & Wesson semiautomatic handgun, ammunition, and loaded magazines for the weapon. The firearm and ammunition were located in the center console of a vehicle. This violation is a Grade C violation. |
| 10 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall not commit another federal, state, or local crime," in that on or about January 1, 2008, the defendant committed the offense of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), whereas the defendant was in possession of a firearm; to wit: a 9mm Smith & Wesson semiautomatic handgun after having already been convicted of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) in case 3:05-cr-00110-01 (RRB). This violation is a Grade B violation. |
| 11 | The defendant has violated the Special Condition of Supervision, "The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician," in that on or about January 1, 2008, the defendant was in possession of two digital scales with powder residue believed to be cocaine. Following contact with APD officers, the vehicle the defendant was operating was impounded. A subsequent search of the vehicle uncovered two digital scales with suspected drug residue. The scales were located in plain view on the front floorboards of the vehicle. This violation is a Grade C violation. |
| 12 | The defendant has violated the Special Condition of Supervision "In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, at the discretion of the probation officer, the defendant shall participate in a program approved by the United States Probation Office for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol," in that on January 7, 2008, the defendant failed to report for a scheduled drug test. This violation is a Grade C violation. |
| 13 | The defendant has violated the Special Condition of Supervision, "The defendant shall participate in and fully comply with either or both inpatient or outpatient mental health treatment program approved by the United States Probation Office. At the discretion of the probation officer, the defendant may be required to pay for all or a portion of any treatment program," in that on January 9, 2008, the defendant was discharged non-compliant from mental health treatment after missing four of five scheduled individual treatment sessions. This violation is a Grade C violation. |

*Petition for Warrant or Summons*
*Name of Offender*     :     Dwayne Dollison Jr.
*Case Number*     :     3:05-cr-00110-01 (RRB)

U.S. Probation Officer Recommendation:

    The term of supervised release should be:

        [X]     Revoked
        [ ]     Extended for _____ year(s), for a total term of _____ years.

[ ]     The conditions of supervised release should be modified as follows:

                                                               Respectfully submitted,

                                                              REDACTED SIGNATURE

                                                              Timothy M. Astle
                                                              U.S. Probation/Pretrial Services Officer
                                                              Date: January 11, 2008

Approved by:

REDACTED SIGNATURE

Eric D. Odegard
Supervising U.S. Probation Officer

THE COURT ORDERS

[X]     The WARRANT FOR ARREST be delivered to the U.S. Marshal's Service; and the petition, probation officer's declaration, and a copy of the warrant shall be sealed in the Clerk's file and disclosed only to the U.S. Attorney for their official use, until the arrest of the offender. The petition for supervised release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]     The issuance of a summons. The Petition for Supervised Release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]     Other:

*Petition for Warrant or Summons*
*Name of Offender*     :     Dwayne Dollison Jr.
*Case Number*          :     *3:05-cr-00110-01 (RRB)*

**REDACTED**

_____
Ralph R. Beistline
U.S. District Court Judge

1/14/08
_____
Date

**Supervised Release Cases:** Pursuant to 18.U.S.C. § 3401(I), the sentencing District Court may designate a Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed findings of facts and recommendations, including disposition recommendations.

**Probation Cases:** Pursuant to *United States v. Frank F. Colacurcio,* 84 F.3d 326, a Magistrate Judge has the authority to conduct a probation revocation hearing **only if** the following three conditions are satisfied: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a Magistrate Judge; and (3) the defendant initially was sentenced by a Magistrate Judge. Therefore, a District Court **may not** designate a Magistrate Judge to conduct revocation hearings on probation cases where a District Court was the sentencing Court.

# United States District Court
for the
# DISTRICT OF ALASKA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case Number: 3:05-cr-00110-01 (RRB) |
| | ) | |
| vs. | ) | DECLARATION IN SUPPORT OF PETITION |
| | ) | |
| Dwayne Dollison Jr. | ) | |

I, Timothy M. Astle, am the U.S. Probation Officer assigned to supervise the Court-ordered conditions of Supervised Release for Dwayne Dollison Jr., and in that capacity declare as follows:

On January 17, 2007, the defendant was sentenced to 27 months imprisonment followed by three years of supervised release for two counts of Felon in Possession of a Firearm. The defendant's term of supervised release commenced on August 17, 2007.

On August 17, 2007, the defendant reported to the Probation Office. The defendant reported that he was residing with his girlfriend, Brittany Landrum, and his sister, Dorothy Hale, in a private residence and the defendant was unemployed. The defendant was placed on a urinalysis testing program and was encouraged to obtain employment.

On August 23, 2007, the defendant reported to the Probation Office as instructed at which time all of his conditions of supervision were reviewed. The defendant indicated that he was offered a position at a local Pizza Hut making pizza's but he declined it in an effort to find a better job. The defendant was told that he may look for better employment, but if he had not secured something within 30 days, that he should secure any verifiable full time employment. It was also during this meeting that the defendant admitted to using marijuana the previous weekend, following his release from incarceration. The defendant was commended for being honest with this officer, but was informed that if he exhibited a problem not using marijuana or starting missing scheduled urine tests that he would be referred for a substance abuse assessment and he would have to follow any treatment recommendations in accordance with his conditions of release.

According to Anchorage Police Report 07-41872, on or about August 23, 2007, the defendant was operating a motor vehicle that was pulled over by an Anchorage Police Department (APD) officer because the defendant was not wearing his seat belt. The defendant was not cited and

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

was only given a warning. However, during an officer safety search of the occupants, a small bag of crack cocaine was discovered at the feet of Kenneth Douglas, the defendant's brother, who was placed under arrest, and several thousand dollars were seized from a second passenger, Yancy Johns. The vehicle was impounded by APD, but the defendant was not detained.

On August 26, 2007, the defendant reported his contact with law enforcement. The defendant was reminded of his condition of supervision not to associate with any known felons or persons involved in illegal criminal activity, even if those persons were family members. The defendant reported that he was unaware of Mr. Douglas having any drugs on him and stated they were only giving Mr. Johns a ride.

On August 29, 2007, APD contacted the probation officer and stated that the defendant was in a vehicle that had just been pulled over for speeding (80 mph) inbound on the Glenn Highway. The driver of the vehicle was Brittany Landrum, and the passengers were the defendant and his brother, Kenneth Douglas. The vehicle was a rental vehicle rented by the defendant's sister, Dorothy Hale. The probation officer asked the APD officer to please instruct the defendant to report to the probation office immediately.

The defendant reported as instructed and explained that he, Brittany, and Kenneth had just been out to Hiland Mountain Correctional Center to place some money on the books of a friend of Brittany's. The defendant was admonished for doing so when he should be focusing all of his attention on securing employment. The defendant submitted a urine specimen for testing, which tested positive for marijuana (THC)[1]. A long discussion was held with the defendant stressing the need for him to not be associating with any persons that will have a negative influence on him or his chance of success on supervision. The defendant was informed that if he continued on his current path that he would assuredly find himself back before the Court having to explain his behavior. To assist in this goal, the defendant was told not to associate anymore with his brother Kenneth Douglas pending the resolution of the drug case against him. The defendant was instructed to call this officer on Monday and provide a status report on his employment search.

On Tuesday, September 4, 2007, this officer contacted the defendant's girlfriend, Brittany, who stated that the defendant had not been at their residence in over a week, and that she believed the defendant to be staying with an old girlfriend, Vanessa Gamage, with whom he has a daughter. This officer asked about how to get a hold of the defendant and Brittany stated that the defendant's sister, Dorothy, would know now. The defendant's sister, Dorothy was contacted via telephone and within a few moments, the defendant called this officer.

---

[1] On or about September 2, 2007, Kroll laboratory drug test analysis confirmed specimen as positive for marijuana metabolite.

2

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

According to the defendant, he has not been gone from his residence for a week, but had stayed at least a few nights at Ms. Gamage's residence due to arguments with Brittany. The defendant provided Ms. Gamages' address and reported that she would be taking him to Avis for a possible job interview. This officer entered into a lengthy discussion with the defendant about his many relationships[2] and while it is admirable that he wants to spend time with his daughter, who resides with her mother, Ms. Gamage, the defendant's focus needs to be on securing full time employment and remaining free of criminal conduct and persons associating in criminal conduct.

On the evenings of September 5 and 6, 2007, attempts to locate the defendant at his reported residence were unsuccessful.

On September 7, 2007, the defendant telephoned this officer and reported that he secured employment as a general laborer for Billy's Maintenance, but did not have any additional information. The defendant was instructed to contact this officer and provide the name of his supervisor, salary, schedule, and other specifics when they became available.

On September 10, 2007, this officer contacted Billy's Maintenance[3] and spoke to Billy Day. Mr. Day confirmed that the defendant would be working for him full time from approximately 8:00 a.m. until approximately 6:00 p.m. daily. The defendant would be earning $10/hour doing light construction, landscaping, interior/exterior work, and installing siding.

On Friday, September 14, 2007, the defendant failed to report for a scheduled drug test.

On Monday, September 17, 2007, this officer called the defendant, informed him that he missed a scheduled drug test on Friday and instructed him to report immediately. The defendant reported and provided a urine specimen for testing, which was negative. The defendant reported that he was no longer working for Billy's Maintenance, but was going to Home Depot to find out about a job. The reason the defendant left Billy's Maintenance was because the defendant was reportedly working, "under the table." The probation officer had informed the defendant that this would be acceptable in the short-term, but eventually he would need to secure lawful and verifiable full time employment. However, based on this, the defendant decided to unilaterally terminate his employment with Billy's Maintenance and look for other employment.

---

[2] It should be noted that the defendant also has a estranged wife, Tasha, and two children. The defendant's wife is a member of the United States Air Force and in August of 2007 was stationed oversea's with their children. It is this officer's understanding that she is currently attending Officers Candidate School in South Carolina.

[3] According to Motznik, Inc. Billy's Maintenance is owned by Billy Day and is recorded as a landscaping business. However, no business license could be located under Billy's Maintenance or under Billy Day.

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

On Tuesday, September 18, 2007, the defendant reported for a scheduled drug test and provided a specimen that was dilute. The defendant was instructed to report back the same day to provide a second specimen for testing. The defendant returned as instructed and provided a urine specimen that was not dilute, but tested positive for marijuana and cocaine. The specimen was sent to Kroll Laboratories for confirmation testing.[4] The defendant denied any use of marijuana or cocaine. Further, the defendant telephoned this officer later that same date and stated the he had proceeded to a private drug testing firm and paid for a drug test that returned negative for the presence of any drugs.

On September 24, 2007, this officer called the defendant to check on the status of his employment search and informed him that Metro Home Furnishings and Anchorage Yamaha both had position openings that were suitable for the defendant.

On September 25, 2007, the defendant telephoned this officer and stated that all charges against his brother had been dropped. He asked if he could have permission to associate with his brother again. This officer informed that defendant that the charges were secondary to the concern that the defendant's brother appeared to be engaged in illegal criminal activity, which is not conducive to the defendant's success on supervision nor in adherence to his conditions of supervision. Therefore, this officer informed the defendant that should he go to his mother home for dinner, where his brother resides, that it would not be a problem for them to associate. However, should he be found to be riding around town with his brother at 2:00 a.m. or should he be with his brother when he should be looking for work or be at work, this would be a problem.

On October 4, 2007, probation officers attempted to contact the defendant at home without success.

On October 5, 2007, probation officers made contact with the defendant at his residence. The defendant, his minor daughter, his cousin, and a his brother, Kenneth Douglas, were present in the residence. The defendant reported that he had returned to Pizza Hut on Fifth Avenue and his step-father, the manager or supervisor, had hired him but he was not sure when he was to start. This officer instructed the defendant to call his step-father immediately, which he did, and the defendant was informed that he could start work at 5:00 p.m. that same day.

On October 5, 2007, this officer proceeded to the Fifth Avenue Pizza Hut at 5:20 p.m. and the defendant had not yet reported to work.

---

[4]On or about September 24, 2007, Kroll laboratory drug test analysis confirmed specimen as positive for marijuana metabolite. The specimen tested NEGATIVE for the presence of cocaine metabolite at a 150 ng/ml threshold.

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

On October 16, 2007, the defendant telephoned this officer to, "just check-in." The defendant reported that he was doing well and he was working a lot. He stated everything was going well at home, with his daughter, and with the numerous women in the defendant's life.

On October 19, 2007, the defendant reported to the probation office for a drug test, which was negative, and then met with this officer. This officer and the defendant discussed the defendant's wife returning to the United States from oversea's and her desire to come to Anchorage and see the defendant and allow the defendant to see their two children for a while. This was both exciting to the defendant to see his children, but also stressful as it would place his wife in town, along with the woman he had a child with (Vanessa Gamage) while he was/is married, as well as with his girlfriend/roommate (Brittany Landrum). We also discussed the defendant's hours at Pizza Hut, which were not as plentiful as the defendant had first described. The defendant was encouraged to look for other employment, but was informed not to quit his current employment while attempting to obtain other employment.

On October 22, 2007, probation officers attempted to contact the defendant at his home. The defendant was not present, but his girlfriend/roommate, Brittany was present. It was noted that it was difficult to ascertain from what Brittany stated whether the defendant was really doing well, or she was just trying to make it sound as if he was doing better.

On November 1, 2007, the defendant reported to the probation office and stated that he continued to work at Pizza Hut on a schedule of approximately four hours a day, four days a week. The defendant was again encouraged to look for a second part-time job or attempt to locate full time employment while continuing to work at Pizza Hut.

On November 2, 2007, a referral packet to the Men's & Women's Center for a mental health evaluation was completed pursuant to the defendant's conditions of supervision. An evaluation was then scheduled for the defendant to take place on November 19, 2007.

On November 14, 2007, the defendant left a voice mail message for this officer stating that he and Brittany would be moving from their residence at 7410 Nancy, #10, in Anchorage, to 9423 Morningside Loop, Unit B, in Anchorage.

On November 19, 2007, the defendant failed to report for his mental health assessment.

On November 21, 2007, this officer telephoned the defendant and asked why he missed his mental health assessment. The defendant reported that when he moved to his new residence he lost the contact information for the mental health provider. The defendant was provided with the information again and instructed to contact the provider to reschedule. Further, the defendant reported that he sprained his ankle the week prior and had not been to work at Pizza Hut for over a week. The defendant was again instructed to secure another part-time job or search for other

5

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

full time employment.

On November 28, 2007, the defendant reported to his scheduled mental health assessment. The defendant also telephoned this officer and stated that he was on his way to the teamsters union to apply for a position he was interested in. He also reported law enforcement contact, having been cited by APD for traveling 59 mph in a 35 mph zone.

On December 3, 2007, at approximately 1:30 p.m., this officer walked to Pizza Hut on Fifth Avenue and was informed by a female supervisor/manager that the defendant had not been working there for some time and was not on the current schedule.

On December 3, 2007, this officer was informed by the defendant's mental health provider that the defendant had missed another scheduled appointment.

On December 3, 2007, probation officers visited the defendant's new residence on Morningside Loop. The defendant was not present, but his girlfriend/roommate, Brittany was present as well as his sister Dorothy (also lives at the residence), two other individuals, and the defendant's father. Everyone in the residence was watching Monday Night Football and at least one visitor exhibited numerous signs of intoxication. This officer was provided a tour of the residence and met briefly with Brittany and the defendant's sister. According to Brittany, the defendant had not been to the residence since the prior Thursday and was again staying at Ms. Gamage's residence. Additionally, she stated she was scared for the defendant and was afraid he was "messing up," by not working and by hanging around with the wrong people. When asked if she thought the defendant was using drugs, she stated she was not worried about that and did not believe he was using any drugs. The defendant's sister, Dorothy, called the defendant and handed the phone to this officer. This officer asked the defendant what he had been doing, why he had not been living at the residence, and why he had missed his mental health appointment that very day. The defendant was reprimanded for missing a second mental health appointment, not keeping this officer informed of his residence/whereabouts, and instructed the defendant to report to the probation office the following day at 9:00 a.m. to speak with this officer.

On December 4, 2007, the defendant reported to the probation office as instructed, but met with probation officer supervisor Eric Odegard as this officer was not available. The defendant was questioned about Vanessa Gamage's residence and asked why he missed another mental health appointment to which the defendant advised that he, "slept in."

On December 5, 2007, this officer received the defendant's mental health assessment, which recommended that the defendant participate in weekly individual therapy for a total of eight to twelve sessions, should the defendant be receptive and participate.

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

On December 10, 2007, the defendant failed to report to the probation office for a scheduled drug test. This officer was notified electronically via e-mail that the defendant had failed to call into the drug test notification system, so an attempt was made to contact the defendant to inform him that he had failed to call and that he must report for a scheduled drug test that same date by 4:30 p.m. Attempts to contact the defendant were unsuccessful.

On December 12, 2007, additional attempts to made to locate the defendant telephonically. Ms. Gamage was contacted and informed this officer that the defendant was staying at his mother's residence and provided another cellular phone number for this officer to use to contact the defendant. A telephone message was then left for the defendant informing him he missed a drug test yesterday and to report to the office immediately. The defendant then called from an unknown prepaid cell phone number and reported that Brittany did not tell him he had a drug test on December 10, 2007. This officer informed the defendant that it is not his girlfriends responsibility to know when his drug tests are, but it is his responsibility. The defendant was instructed to immediately report to the probation office.

The defendant reported to the probation office at 4:00 p.m. and provided a urine specimen that tested negative. The defendant then met for an extensive interview with this officer whereas residence information, employment, treatment, finances, urine testing, and non-compliance issues regarding his conditions were discussed. This officer's notes reflect the following, "Explained to D that he MUST secure FT employment. Told D that he MUST make sure this officer knows where he is laying his head every night. Told D that he MUST call in for ALL his UA's and report when his name is called. Told D he MUST give clean UA's. Told D that he MUST contact me when his cell phone # changes. Told D he MUST make it to his weekly MH counseling meetings. Told D he MUST be honest with me. Told D he MUST fully complete his MSR's even if he has to write that he had no income but that his GF (one of them) Brittany, gave him $50. Told D that he MUST keep this officer updated on what is happening in his life so we have good communication and I can help him when/if he needs it." The defendant appeared receptive and accepting of this officers analysis and was informed that if he did not turn things in a positive direction soon, he would have to explain to a Judge why he is in non-compliance with his conditions. Finally, the defendant was reminded to not miss his next scheduled appointment, the next day, with his mental health therapist.

On December 20, 2007, the defendant's mental health therapist telephoned this officer and reported that the defendant had made his scheduled appointment on December 13, 2007, but he had failed to make his appointment on December 20, 2007.

On December 21, 2007, this officer attempted to contact the defendant and left a voice mail message for the defendant on his reported residential phone number. This officer stated that the defendant missed another mental health appointment and has only attended two of five scheduled appointments. Further, the defendant was instructed to report to the probation office on

7

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

Wednesday, December 26, 2007.

On December 26, 2007, this officer received a telephone message from the defendant requesting that this officer call him at 744-4521. The defendant reported that he was now working full time at Pizza Hut and would be at work that night. This officer called 744-4521 and the electronic voice message reported that the phone belonged to "Terrence Anthony"[5] and the voice mailbox was full so a message could not be left.

On January 2, 2008, the defendant called this officer to report that he had also taken a second job as a newspaper deliverer for the Anchorage Daily News. This officer stated that while I have been encouraging the defendant to work at least 40 hours per week, I also wanted to issue a warning to the defendant about working as a newspaper deliverer, which necessitates driving around the community, during the early morning hours, supposedly in Brittany's vehicle as the defendant does not have a vehicle, and how he should be delivering newspapers by himself and not with others, such as his brother, Kenneth Douglas, in his car.

During this same conversation the defendant also reported that on the prior evening, January 1, 2008, the defendant had contact with law enforcement. The defendant reported that he was "just taking a girl home to pick up someone" as he, the defendant, was the designated driver that night, when the "other girls babies father" got upset and started threatening the defendant. The defendant stated that APD showed up and, "they (APD) just up and impounded my car, well, Brittany's car." The defendant was asked if he recorded the name of the officer or an APD report number and the defendant stated he had received nothing and was trying to get Brittany's car out of impound that day.

On January 7, 2007, after returning to the office after a couple days of leave, this officer obtained the APD report relative to this incident; APD 08-37. According to the report, the complainant claimed that her son's ex-girlfriends new boyfriend (later identified as Dwayne Dollison) was en route to their residence with a gun. When APD arrived at the residence they witnessed a white Cadillac Escalade pulling up to the reported residence. A felony stop was made on the vehicle by three APD vehicles/officers and all three occupants of the vehicle were removed from the Escalade. The driver was identified as the defendant, Dwayne Dollison. The vehicle belonged to his girlfriend/roommate, Brittany Landrum. The front seat passenger was identified as Amanda Shetters, the ex-girlfriend of the complainant's son. The back seat was occupied by another male, not named in the report.

---

[5] According to the State of Alaska Department of Corrections Offender Tracking and Information System (OTIS), a "Terrence Anthony" is currently under felony supervision by the Anchorage Adult Probation Office. It is not verified if this is the same "Terrence Anthony" that is the owner of the cellular phone number that the defendant provided.

8

*Declaration In Support of Petition*
Dwayne Dollison, Jr. - 3:05-cr-00110-01 (RRB)

After the occupants were removed from the vehicle, an APD officer approached the open driver side door to clear the car of any other occupants who might be hiding inside the car. On the floor of the drivers seat an officer observed a small digital scale commonly used in the weighing of illegal drugs prior to their sale or distribution; the digital scale also appeared to have drug residue on it. The vehicle was then impounded as evidence and the case status was noted as, "pending the application of a search warrant."

Later on January 7, 2007, this officer spoke to the primary APD officer the night of the above noted incident and he stated that a search warrant was obtained for the Escalade, it was searched, and beside the front seat console, a 9mm Smith & Wesson semiautomatic handgun was located along with a magazine for the weapon, which was loaded with 14 rounds of ammunition and one round in the chamber. Also found as a second digital scale in the backseat on the floorboards. Therefore, this firearm and scales were entered into evidence are pending examination at the State of Alaska Crime Laboratory.

Executed this 11th day of January, 2008, at Anchorage, Alaska, in conformance with the provisions of 28 U.S.C. § 1746.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

_REDACTED_
Timothy M. Astle
U.S. Probation Officer

9